## Angle's Estate.

*Frank P. McCluskey*, for rule;  *Chidsey, Maxwell & Frack*, contra.

STEWART, P. J., Jan. 13, 1930.—This was a rule on Emma I. Angle to show cause why she should not enter security for costs.  She was a nonresident of Pennsylvania and at one time was the wife of the decedent.  She claimed her share of the estate as widow and as a creditor, filing nine exceptions to the account, attacking sums paid for taxicabs, for damages, for tombstone, for premiums on the executor's bond, for payment to the executor himself for compensation, and for payments to counsel, and for his refusal to pay the sum of $11,245 alimony due her under the decree of the Court of Chancery of the State of New Jersey, made on Nov. 5, 1884, which she alleged she had demanded of the executor.  In the petition for the rule, the executor alleged that Emma I. Angle was not the widow of the decedent; that she was not a creditor.  He admitted that she elected to take against the terms of the will, and that she had demanded her widow's exemption, but he alleged that the decedent had been divorced from the said Emma I. Angle by a decree of the District Court of Monona County, Iowa, on Oct. 5, 1889; and that her claim was invalid on its face, and that she should not be permitted to litigate her claim without entering security for costs.

To the rule, an answer was filed by Emma I. Angle, in which she alleged that she had never been a resident of Iowa, but had always resided in New Jersey, and that no personal service in the Iowa divorce proceeding had ever been made on her; and that the divorce granted in Iowa was void; and she further averred that prior to the Iowa divorce she had obtained a divorce in New Jersey *a mensa et thoro*, with a decree for the payment of $5 a week; and that the decedent had never paid any part of said amount.  That constituted her claim against the estate.  It is manifest that the questions as to the validity of the Iowa divorce, and whether the estate is liable for alimony from the date of the New Jersey decree to the date of the Iowa decree, or until decedent's death, or whether the claim is in whole or in part barred by the statute of limitations, are not now before us for decision.  Where claims are made in the Orphans' Court, which on their faces are without merit, we have declined to appoint an auditor, but the questions arising from this claim are of a different character, and the sole matter for present determination is, has the executor a right to compel her to give security for costs?  Section 54 of the Rules of Court provides as follows: "Where the plaintiff resides out of the state at the time of suit brought, or subsequently removes therefrom, the defendant on affidavit of a just defense to the whole demand, may have a rule

of course on the plaintiff to enter security for costs within thirty days after notice of the rule, or show cause to the contrary, and in the meantime the proceedings shall stay; in default of compliance with this rule, judgment of nonsuit may be entered." We have no rule upon the subject in the Orphans' Court. Section 255 heads the Rules of the Orphans' Court. It is as follows: "The foregoing rules of the Court of Common Pleas, *mutatis mutandis*, are hereby extended to this court as far as they are applicable and not in conflict with the rules in this schedule." The learned counsel for the executor contends that section 255 makes section 54 applicable. That section was first introduced into our rules of court in the rules adopted by Judges Schuyler and Scott on Jan. 2, 1888.

We know of no case where the meaning of section 255 has been passed on by the judges of this court. The expression *mutatis mutandis* means "the necessary changes." The implication is that the subject-matter is to be the same, but unimportant matters, like names, dates, &c., are subject to change when necessary. It would seem that the plain meaning of section 54 is to confine it to actions at law in the Common Pleas. The section refers to plaintiff and defendant, affidavit of defense, stay of proceedings and nonsuit. These things are not met with in the Orphans' Court practice. In Buckwalter's Estate, 6 Pa. C. C. Reps. 20, a case in the Orphans' Court of Chester County, the syllabus is: "In the absence of a rule of court requiring security for costs in the Orphans' Court, a nonresident claimant, petitioning for a citation upon an administrator to file an account, will not be required to give security." In that case there was a petition for a citation on administrators to file an account. The answer alleged that the petitioner was a resident of Iowa, that all the debts of the estate were paid, and that petitioner had no interest in the estate, and that the court should require him to give security for costs before acting on his petition. The rule of court in the Common Pleas of that county is almost the same as ours. The court discharged the rule for the reason given in the syllabus. In Lehman's Estate, Register's Court of Philadelphia, 4 Sept. 1847 (MS.), it was held that a nonresident heir, on an appeal from the grant of probate of a will, may be compelled to give security for costs (this has since been required by statute). In Rea's Estate, 15 Phila. 578, a petition for order on contestants to enter security for costs, President Judge Hanna, of the Orphans' Court of Philadelphia County, refused the application because it had not been made properly, and because some of the contestants resided in the state. Again, in McCullough's Estate, 5 Pa. C. C. Reps. 87, the same learned judge said: "It is not customary to require a claimant, whether creditor, legatee or distributee, in the first instance, to enter security for costs. If he is successful, his costs follow the award and are paid by the estate. But if unsuccessful, he will, as a rule, be obliged to personally pay the costs." This would seem to imply that Judge Hanna thought that, under proper circumstances, security for costs might be required. In the Appeal of St. Joseph's Orphan Asylum, 38 Pa. 535, it was held: "The fees of an auditor are payable by the party at whose instance he was appointed, but may be taxed and collected from the losing party, as other costs are taxed and collected." Mr. Justice Strong in that case said: "The case of the appellants is a hard one, but that will not justify us in relieving them by casting an equal or greater hardship upon an officer of the court. It was at their instance that he was appointed an auditor, and that he performed the services for which they are asked to pay. That they are liable for his fees is beyond question. The Act of March 29, 1819, P. L. 267 (Stroud & Brightly's Purdon, 68) [7 Sm. Laws, 228, § 5], provides that the fees of audi-

tors are to be fixed by the court and to be paid and taxed as other costs. They are to be paid and they are to be taxed as other costs are taxed. Paid by whom? The court may compel the losing party to pay them; but if they cannot be obtained from that course, the auditor is not to lose them. Indeed, the act of assembly seems to look as if they are to be paid before they can be taxed as costs against the losing party."

The learned counsel for the parties have not cited any authorities upon this interesting question, and those that we have cited are such as we have found in a limited examination. The result of that examination seems to be that the estate in the first instance must pay the costs that necessarily follow the determination of a claim such as the present one; that the losing party would then be liable to the estate, and that the practice ought to be followed as above indicated of not appointing an auditor where the claim on its face has no merit. In the present case, however, the subject-matter of the exceptions should be adjudicated.

And now, Jan. 13, 1930, rule to show cause why security should not be entered is discharged.